UNITE STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LIFE360, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>ADVANCED GROUND INFORMATION SYSTEMS, INC.,<br><br>    Defendant. | Case No. 15-cv-00151-BLF<br><br>**ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; AND DENYING MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS**<br><br>[Re: ECF 19] |

Defendant Advanced Ground Information Systems, Inc. ("Defendant" or "AGIS") moves to dismiss this action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5). Plaintiff Life360, Inc. ("Plaintiff" or "Life360") opposes the motion. For the reasons discussed below, the motion to dismiss for lack of personal jurisdiction is DENIED and the motion to dismiss for insufficient service of process is DENIED.

**I.    BACKGROUND**

Plaintiff's operative first amended complaint ("FAC") alleges the following facts. Plaintiff, a corporation with its principal place of business in San Francisco, California, makes a mobile software application called Life360 Family Locator. FAC ¶¶ 2, 8. The application allows family members to view each other's locations on a map. *Id.* ¶ 8. Defendant, a corporation with its principal place of business in Jupiter, Florida, owns several patents that it contends cover basic concepts such as showing the locations of users and facilitating communication among them. *Id.*

¶¶ 3, 9, 12. Defendant provides software for military, first responder, and law enforcement use, including its "LifeRing" products. *Id.* ¶ 9.

Plaintiff claims that Defendant has misused its patent rights in an effort to drive Plaintiff out of the marketplace so that it can prospectively enter the civilian commercial market in competition with Life360. FAC ¶ 36. According to Plaintiff, Defendant's misuse of its patents includes: falsely marking LifeRing manuals and similar materials with patents that Defendant owns but that do not cover the LifeRing products,[1] *id.* ¶¶ 22-26; sending Plaintiff a cease and desist letter accusing Plaintiff of infringing at least four of Defendant's patents, *id.* ¶ 10; filing a patent infringement suit against Plaintiff in the United States District Court for the Southern District of Florida, *id.* ¶ 13; and threatening one of Plaintiff's large investors, The ADT Corporation ("ADT"), with a patent infringement lawsuit based on ADT's investment in Plaintiff, *id.* ¶¶ 46-51.

Plaintiff filed the present action on January 12, 2015 and thereafter filed the operative FAC as of right, alleging claims for: (1) false patent marking; (2) tortious interference with contract; (3) intentional interference with prospective economic relations; and (4) unfair competition. After the FAC was filed, Defendant released a new software product called "HoundDog." Pl.'s Opp. at 1, ECF 23. Plaintiff states that whereas LifeRing is intended for military, first responder, and law enforcement users, HoundDog is intended for civilian users. *Id.* According to Plaintiff, HoundDog competes directly with Plaintiff's application.

Defendant seeks dismissal of the action for lack of personal jurisdiction and insufficient service of process. Prior to the hearing on the motion, Plaintiff requested leave to take jurisdictional discovery. The Court granted that request over Defendant's objection. *See* Order Granting Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery, ECF 36. After completing jurisdictional discovery, Plaintiff requested leave to file a supplemental brief in

---

[1] It is not clear whether the LifeRing software itself is marked. The FAC's specific allegations of marking are limited to three operating manuals that are available for download on AGIS's website: a "LifeRing Operator's Manual," an "Android LifeRing Pocket Guide," and a "LifeRing PC Pocket Guide." *See* FAC ¶¶ 22-24. However, the FAC alleges on information and belief that "AGIS marks all of its products and related materials with its patents without regard for whether each and every marked patent includes a claim that covers those product(s)." *Id.* ¶ 34.

1  opposition to Defendant's motion to dismiss. The Court granted that request over Defendant's
2  objection and also granted Defendant leave to file a supplemental reply brief. *See* Order Re
3  Life360's Administrative Motion to File a Supplemental Brief in Response to AGIS's Motion to
4  Dismiss, ECF 44. The Court has considered the briefing and evidence submitted by the parties as
5  well as the oral argument of counsel presented at the hearing on June 25, 2015.[2]

## II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to seek dismissal of an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When a defendant challenges a court's personal jurisdiction over it, the plaintiff bears the burden of establishing that jurisdiction is proper. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). The plaintiff may meet that burden by submitting affidavits and discovery materials. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ranza*, 793 F.3d at 1068 (internal quotation marks and citation omitted). "[T]he plaintiff cannot simply rest on the bare allegations of its complaint." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotation marks and citation omitted). However, uncontroverted allegations in the complaint are accepted

---

[2] Plaintiff's Objections to Evidence in Defendant's Reply Declarations and Reply Brief in Support of Defendant's Motion to Dismiss, filed April 9, 2015, are OVERRULED to the extent that Plaintiff requests the Court to strike new evidence and argument not raised in the initial motion papers. Although the Court need not consider such evidence and argument, *see Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007), in this case any prejudice caused by introduction of new matter in Defendant's reply materials was cured when the Court granted Plaintiff leave to take jurisdictional discovery and to file supplemental briefing. Plaintiff also raises specific objections to portions of the reply declarations submitted by Malcom Beyer and Michelle Morris, addressed separately as follows: (1) Morris's statement that she was not authorized to accept service of process for AGIS, Morris Reply Decl. ¶ 8, SUSTAINED (improper legal opinion); (2) Beyer's statement that Plaintiff's counsel represented in the Florida patent litigation that Plaintiff and Defendant are not competitors, Beyer Reply Decl. ¶ 4, SUSTAINED (hearsay, conclusory, and lacking in evidentiary support); (3) Beyer's statement that he was not aware that anyone in California had downloaded HoundDog, Beyer Reply Decl. ¶ 6, SUSTAINED (lacking in personal knowledge or evidentiary support); and (4) Beyer's statement that a particular document did not suggest a "strategic partnership" between AGIS and Green Hills, Beyer Reply Decl. ¶ 17, SUSTAINED (best evidence rule).

as true, and factual disputes created by conflicting affidavits are resolved in the plaintiff's favor. *Id.*

Where no applicable federal statute governs personal jurisdiction, "the law of the state in which the district court sits applies." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Id.* "[D]ue process requires that the defendant 'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Ranza*, 793 F.3d at 1068 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks and citation omitted). "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Id.* at 1068. "General jurisdiction exists when the defendant's contacts "are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (internal quotation marks and citation omitted). A nonresident that is subject to the court's general jurisdiction may be sued for claims "arising from dealings entirely distinct" from the forum-related activities. *Id.* (internal quotation marks and citation omitted) (emphasis omitted). In contrast, specific jurisdiction exists when the defendant's contacts with the forum state are more limited but the plaintiff's claims arise out of or relate to those contacts. *Id.* at 754. General jurisdiction is referred to as "all-purpose" jurisdiction whereas specific jurisdiction is referred to as "case-specific" or "case-linked" jurisdiction. *Ranza*, 793 F.3d at 1069 n.2 (citations omitted).

**B.     Discussion**

Plaintiff contends that Defendant is subject to both general jurisdiction and specific jurisdiction in this district. The Court addresses those contentions in turn.

        **1.     General Jurisdiction**

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 134 S. Ct. at 760. "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Id.*

4

(internal quotation marks, citation, and alterations omitted).  "Those affiliations have the virtue of being unique – that is, each ordinarily indicates only one place – as well as easily ascertainable." *Id.*  In order to find that a corporation is subject to general jurisdiction in yet another forum, the plaintiff must demonstrate not only "continuous and systematic" contacts with the forum – that alone is insufficient – but that the "corporation's affiliations with the state are so continuous and systematic as to render it essentially at home in the forum State." *Id.* at 761 (internal quotation marks and citation omitted).

Defendant's contacts do not come close to meeting this high standard.  According to the uncontroverted declaration statements of AGIS's Chief Executive Officer and Chairman of the Board of Directors, Malcolm K. Beyer, AGIS was incorporated in Florida in 2004 and has maintained its principal place of business in Florida since formation.  Beyer Decl. ¶¶ 2-3, ECF 19-2.  AGIS is not registered to do business in California, has no offices in California, and has no employees in California.  *Id.* ¶¶ 4-6.  Mr. Beyer has traveled to California only once since January 1, 2013.  Def.'s Response to Interrog. 7, Exh. 6 to Venkatesan's Suppl. Decl., ECF 41.  AGIS has never entered into a contract with any company in California.  Def.'s Response to Interrog. 6.  AGIS has never sold LifeRing in California.[3]  Def.'s Response to Interrog. 1; Beyer Reply Decl. ¶¶ 3, 5, ECF 26-1.

Jurisdictional discovery did lead to identification of a number of contacts with California.  AGIS's sale of LifeRing to the United States Navy, SPAWAR Systems Center Atlantic, in South Carolina ("SPAWAR Atlantic") led to several ancillary contacts in California related to that contract.[4]  Beyer Dep. Rough Draft at 50:21-51:17, Exh. 1 to Venkatesan's Suppl. Decl., ECF 41;

---

[3] Plaintiff asserts that LifeRing has been sold in California, but the cited evidence does not support that assertion.  For example, Plaintiff cites evidence regarding SPAWAR Atlantic's purchase of LifeRing, *see* Pl.'s Suppl. Opp. at 2, ECF 47, but as discussed below SPAWAR Atlantic is not located in California.  Plaintiff asserts that Defendant sold LifeRing to a company called Oceus Networks, which Plaintiff characterizes as "a California company." Pl.'s Suppl. Opp. at 2.  However, while the portions of Mr. Beyer's deposition that are cited in support do establish sales to Oceus, Mr. Beyer testified that Oceus was headquartered in Virginia.  *See* Beyer Dep. Rough Draft at 59:1-60:3, Exh. 1 to Venkatesan's Suppl. Decl., ECF 41.  Plaintiff has not cited evidence establishing that Oceus is a California corporation.

[4] Mr. Beyer's reply declaration references a sale of LifeRing to "the U.S. Department of Defense in Norfolk, Virginia." Beyer Reply Decl. ¶ 13, ECF 26-1.  It is not clear if that is the same sale as

Def's Response to Interrog. 2. AGIS also provided downloads of LifeRing to a limited number of United States Navy personnel and contractors at the United States Navy, SPAWAR Systems Center Pacific, in San Diego, California ("SPAWAR Pacific"). Def's Response to Interrogs. 2-3. In 2014, Mr. Beyer attended a military exercise called "JFIX" at Camp Roberts in San Diego, California.[5] Beyer Dep. Rough Draft at 61:7-20, 64:2-7. At JFIX, Mr. Beyer sat in a tent and demonstrated LifeRing on PCs and smartphones when asked to do so. *Id.* at 64:2-7, 65:8-12. Mr. Beyer discussed LifeRing with several private companies who had representatives at JFIX, including Satcom Direct, *id.* at 64:11-65:7; ADI Technology, *id.* at 68:13-70:9; and Maven Consulting, *id.* at 71:13-71:12. It is not clear whether any of those companies are California entities, although it is clear that Mr. Beyer used the opportunity of being in California with those companies to market LifeRing to them.

AGIS has made other efforts to market LifeRing to private companies, several of which downloaded LifeRing in California at various times for purposes of evaluation. Those companies include the Harris Corporation, Beyer Dep. Rough Draft at 72:8-73:5; CornerTurn LLC, *id* at 74:6-76:2; Integrity Applications, *id.* at 76:8-77:20; American Reliance, Inc., *id.* at 78:2-79:6; ViaSat, *id.* at 83:12-84:17; and Aero Computers, *id.* at 84:18-85:13.[6] It is not clear from the record whether all of those companies are based in California, but Defendant's interrogatory responses indicate that at least CornerTurn, Integrity Applications, and American Reliance have California addresses. *See* Def.'s Response to Interrogs. 2-3, Exh. 6 to Venkatesan's Suppl. Decl.,

---

the one to SPAWAR Atlantic referenced in Mr. Beyer's deposition and AGIS's responses to interrogatories.

[5] AGIS had demonstrated LifeRing at prior JFIX exercises conducted in California as well. Beyers Dep. Rough Draft at 61:23-62:14.

[6] After Plaintiff submitted the rough draft of Mr. Beyer's deposition in conjunction with their supplemental opposition, Defendant submitted Mr. Beyer's preliminary corrections to his deposition. *See* Preliminary Corrections, ECF 43-2. The preliminary corrections clarify that two companies that Mr. Beyer testified had downloaded LifeRing in California for evaluation, ViaSat and Aero Computer, did so before January 1, 2013. *Id.* at ¶ 2. The significance of January 1, 2013 is unclear. Even assuming that January 1, 2013 is a critical date, and assuming that the downloads of the two companies in question are not considered, Mr. Beyer's deposition makes clear that he and AGIS had discussions with other companies that downloaded LifeRing in California post-January 1, 2013.

ECF 41.

AGIS also reached out to a California company, Green Hills Software, Inc., a security software firm located in Santa Barbara, California. Beyer Dep. Rough Draft at 36:16-20; Def's Response to Interrogs. 2-3. AGIS contacted Green Hills because Green Hills had a security product that AGIS found "of interest." Beyer Dep. Rough Draft at 36:23-25. AGIS loaded LifeRing onto one or more of Green Hills' smart phones. Beyer Dep. Rough Draft at 33:13-34:5. Green Hills used LifeRing in its lab in California to verify that the software would work. *Id.* at 39:4-8. Green Hills also demonstrated LifeRing working in conjunction with Green Hills' smart phones at a trade show, the MILCOM Conference in San Diego, California.[7] *Id.* at 34:6-35:16. Green Hills issued a press release stating that it had a "strategic partnership" with AGIS. *Id.* at 32:21-33:15. AGIS took that to mean that LifeRing worked on Green Hills' products and AGIS did not object to the "strategic partnership" characterization because AGIS was "happy to have anybody say that they were working with" AGIS. *Id.* at 33:1-15.

AGIS maintains a website that is available worldwide, one purpose of which is to advertise LifeRing. *Id.* at 90:9-25. LifeRing cannot be downloaded directly from the website, but companies that are interested in LifeRing can fill out an online form to request a download of LifeRing for evaluation.[8] *Id.* at 91:4-20; *see also* Beyer Reply Decl. ¶¶ 10-11.

---

[7] According to Mr. Beyer, "[t]he MILCOM 2013 conference was a conference for military and first responders." Beyer Reply Decl. ¶ 17, ECF 26-1.

[8] Plaintiff asserts that Defendant's other application, HoundDog, can be purchased and downloaded via the Google Play Store. Although evidence regarding HoundDog's release after the filing of this action might be relevant to support Plaintiff's theory that Defendant attempted to drive Plaintiff out of the market in order the clear the way for Defendant's release of a commercial application, the Court must disregard evidence relating to HoundDog for purposes of the personal jurisdiction analysis because HoundDog was released after the events giving rise to this action and after the filing of the original complaint and operative FAC. "[C]ourts must examine the defendant's contacts with the forum at the time of the events underlying the dispute when determining whether they have jurisdiction." *Steel v. United States*, 813 F.2d 1545, 1549 (1987); *see also Farmer's Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (1990) ("Only contacts occurring prior to the event causing the litigation may be considered."); *Kruska v. Perverted Justice Foundation, Inc.*, No. CV 08-0054-PHX-SMM, 2009 WL 249432, at *5 (D. Ariz. Feb. 2, 2009) ("Jurisdiction must be established at the time of the suit, and thus, subsequent actions by a defendant do not impact the jurisdictional analysis."); *Nutrishare, Inc. v. BioRx, LLC*, No. CIV S-08-1252 WBS, 2008 WL 3842946, at *8 n.3 (E.D. Cal. Aug. 14, 2008) (declining to consider post-suit contacts with forum state).

1	Finally, Plaintiff's uncontroverted allegations establish that Defendant mailed a cease and desist letter to Plaintiff's San Francisco address; sued Plaintiff for patent infringement in the Southern District of Florida; and threatened to sue one of Plaintiff's investors for patent infringement.  FAC ¶¶ 10-13, 47.

In summary, the evidence and Plaintiff's uncontroverted allegations establish that Defendant's place of incorporation and principal place of business are in Florida; Defendant has never sold LifeRing in California; Defendant has marketed LifeRing in California; Defendant sent one cease and desist letter to Plaintiff's California address; Defendant sued Plaintiff in Florida; and Defendant threatened one of Plaintiff's investors.  Those contacts are not sufficiently "continuous and systematic" to render AGIS "essentially at home" in California.  *See Daimler*, 134 S. Ct. at 761.  Accordingly, Defendant is not subject to this Court's general jurisdiction.

## 2. Specific Jurisdiction

Courts in the Ninth Circuit employ a three-prong test when determining whether a nonresident defendant may be subject to specific personal jurisdiction in a forum:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.  "The plaintiff bears the burden of satisfying the first two prongs of the test."  *Id.*  If the plaintiff succeeds in doing so, the burden shifts to the defendant to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable."  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).[9]

---

[9] The Court notes that in patent infringement cases, "[t]he law of the Federal Circuit, rather than the law of the various regional circuits, applies to determine whether the exercise of personal jurisdiction over an out-of-state defendant" is proper.  *Adobe Sys. Inc. v. Tejas Research, LLC*, No. C-14-0868 EMC, 2014 WL 4651654, at *2 (N.D. Cal. Sept. 17, 2014).  It is not clear whether

### a. Purposeful Direction

"Purposeful direction" and "purposeful availment" are two distinct concepts, the former most often used in suits sounding in tort and the latter in suits sounding in contract. *Schwarzenegger*, 374 F.3d at 802. Purposeful availment may be found when the defendant executes or performs a contract in the forum state or otherwise "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (internal quotation marks and citation omitted). "In return for these benefits and protections, a defendant must – as a quid pro quo – submit to the burdens of litigation in that forum." *Id.* (internal quotation marks and citation omitted). "A showing that a defendant purposefully directed his conduct toward a forum state, by contrast, usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id.* at 803. "The Supreme Court has held that due process permits the exercise of personal jurisdiction over a defendant who purposefully directs his activities at residents of a forum, even in the absence of physical contacts with the forum." *Id.* (internal quotation marks, citation, and brackets omitted).

In the present case, a purposeful direction analysis is most appropriate. Although the statutory claim of false patent marking is not a tort, at least one district court has found it to be similar to a business tort in a related context. *See Advanced Cartridge Techs., LLC v. Lexmark Int'l, Inc.*, No. 8:10-cv-486-T-23TGW, 2011 WL 6719725, at *3 (Dec. 21, 2011) (finding false patent marking akin to business torts for purposes of a prudential standing analysis). All of Plaintiff's other claims – tortious interference with contract, intentional interference with prospective economic relations, and unfair competition – are torts. Plaintiff itself relies on the purposeful direction test in opposing Defendant's motion. *See* Pl.'s Opp. at 9, ECF 23; Pl.'s Suppl. Opp. at 1, 4-6, ECF 47.

Under the purposeful direction test, "a defendant purposefully directed his activities at the forum if he: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing

---

Federal Circuit personal jurisdiction law similarly would apply to a patent false marking claim. However, the Federal Circuit test is essentially identical to the *Schwarzenegger* test. *See id.* at *3.

harm that the defendant knows is likely to be suffered in the forum state." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (internal quotation marks and citation omitted). The analysis of these factors must focus on the "defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014). "[M]ere injury to a forum resident is not a sufficient connection to the forum. . . . The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 1125.

### i. Intentional Act

As discussed above, the evidence and Plaintiff's uncontroverted allegations establish that Defendant committed a number of intentional acts, including marketing LifeRing in California, sending a cease and desist letter to Plaintiff's California address, suing Plaintiff in Florida, and threatening one of Plaintiff's investors. *See Schwarzenegger*, 374 F.3d at 806 (intentional act means only that the defendant acts "with the intent to perform an actual, physical act in the real world").

### ii. Expressly Aimed at Forum State

Taking those contacts in reverse order, the latter two – suing Plaintiff in Florida and threatening one of Plaintiff's investors – are insufficient to show express aiming under *Walden*, as they establish contact only between Defendant and *Plaintiff*, not Defendant and the *forum state*. The cease and desist letter, standing alone, likewise is insufficient to satisfy the purposeful direction test. *See Square, Inc. v. Morales*, No. C-13-01431 SBA, 2013 WL 6199281, at *5 (N.D. Cal. Nov. 27, 2013).

However, marketing LifeRing into California is an act expressly aimed at the forum state itself. Even assuming (without deciding) that Defendant is correct in arguing that its contacts with the United States military in California may not be considered under the government contacts exception, *see Zeneca Ltd. v. Mylan Pharmaceuticals, Inc.*, 173 F.3d 829, 831 (Fed. Cir. 1999), the evidence establishes that Mr. Beyer demonstrated LifeRing to representatives of private companies that he met at JFIX, including Satcom Direct, Beyer Dep. Rough Draft at 64:11-65:7; ADI Technology, *id.* at 68:13-70:9; and Maven Consulting, *id.* at 71:13-71:12.

10

AGIS also permitted a number of private companies to download LifeRing in California for purposes of evaluation. Those companies included the Harris Corporation, Beyer Dep. Rough Draft at 72:8-73:5; CornerTurn LLC, *id* at 74:6-76:2; Integrity Applications, *id.* at 76:8-77:20; American Reliance, Inc., *id.* at 78:2-79:6; ViaSat, *id.* at 83:12-84:17; and Aero Computers, *id.* at 84:18-85:13. At least CornerTurn, Integrity Applications, and American Reliance appear to be California-based. *See* Def.'s Response to Interrogs. 2-3, Exh. 6 to Venkatesan's Suppl. Decl., ECF 41.

AGIS reached out to Green Hills, a California company, permitted Green Hills to test LifeRing in Green Hills' lab, permitted Green Hills to demonstrate LifeRing at MILCOM, and did not object to Green Hills' public comments that Green Hills and AGIS had formed a "strategic partnership." Beyer Dep. Rough Draft at 32:21-36:25, 39:4-8.

AGIS also maintains a website that is available worldwide – including in California – for the purpose of advertising LifeRing. *Id.* at 90:9-25. While LifeRing cannot be downloaded directly from the website, companies that are interested in LifeRing can fill out an online form to request a download of LifeRing for evaluation. *Id.* at 91:4-20; *see also* Beyer Reply Decl. ¶¶ 10-11. The Ninth Circuit has held that "operating even a passive website in conjunction with 'something more' – conduct directly targeting the forum – is sufficient to confer personal jurisdiction." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002) (citing *Panavision Int'l, Inc. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998)). It is unclear whether *Rio* remains good law after *Walden*. However, *Walden* raises no such doubts regarding Defendant's direct marketing efforts in California, described above.

Thus although Defendant's contacts are not enough to make AGIS "essentially at home" in California for purposes of general jurisdiction, they are sufficient to establish the requisite connection between Defendant and the forum state to satisfy the requirements of this element of specific jurisdiction.

### iii.  Causing Harm Likely to be Suffered in the Forum State

Defendant argues that nothing it does in California has harmed Plaintiff. The thrust of Plaintiff's false patent marking claim is that AGIS has marked its LifeRing products with patents

it owns but that do not cover LifeRing in an effort to create a market misconception that AGIS is entitled to injunctive relief against similar products. *See* FAC ¶¶ 35-42. Plaintiff claims that Defendant's false marking has caused a perceived devaluation of Plaintiff's Life360 products, has dissuaded investors in Life360, and has caused Plaintiff other economic loss. *See id.* Defendant has not presented evidence to refute those allegations. Defendant argues that it has not *sold* any LifeRing products in California. However, actual sales in the forum state are not necessary to satisfy the purposeful direction test when the plaintiff alleges that the defendant has damaged its brand and caused customer confusion. *See Wine Group LLC v. Levitation Management, LLC*, No. CIV 2:11-1704 WBS, 2011 WL 4738335, at *5 (E.D. Cal. Oct. 6, 2011) (lack of forum sales did not establish lack of harm to plaintiff where plaintiff alleged trademark infringement causing damage to brand and customer confusion). Accordingly, the Court concludes that the third prong of the purposeful direction test is satisfied here.

### b. Arising Out Of

The second prong of *Schwarzenegger's* specific jurisdiction inquiry requires that the "claim asserted in the litigation arises out of the defendant's forum related activities." *Panavision Int'l, Inc. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). This prong is met if the plaintiff would not have suffered injury "but for" defendant's conduct directed toward the plaintiff in the forum state. *Id.*

Defendant argues that nothing it did in California relates to Plaintiff's claims. However, as discussed above, Plaintiff's false patent marking claim asserts that Defendant falsely marked its LifeRing products to create a market misconception that Defendant is entitled to injunctive relief against similar products and thus to "stifle competition so that it could prospectively enter the commercial market and compete with Life360." FAC ¶ 36. Plaintiff's false marking claim thus arises directly out of Defendant's marketing of its falsely marked LifeRing products into Plaintiff's home state of California. *Cf. Wine Group*, 2011 WL 4738335, at *10 (finding "arising out of" prong satisfied by the defendant's use of infringing trademarks intended to devalue the plaintiff's trademarks and exploit goodwill created by the plaintiff).

12

### c. Reasonableness

Because Plaintiff has made out a prima facie case with respect to the first two prongs of the *Schwarzenneger* test, the burden shifts to Defendant to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *CollegeSource,* 653 F.3d at 1076 (quoting *Burger King*, 471 U.S. at 476-78). Courts in the Ninth Circuit consider a seven-factor balancing test when addressing the question of reasonableness:

> (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Panavision*, 141 F.3d at 1323 (citing Burger King, 471 U.S. at 476-77).

Defendant does not address this test at all, relying exclusively upon its arguments that Plaintiff has not demonstrated contacts sufficient to make out a prima facie case of personal jurisdiction. Accordingly, Defendant has failed to meet its burden of setting forth a "compelling case" that exercise of jurisdiction would not be reasonable here.

### 3. Conclusion

Plaintiff has made a prima showing of specific personal jurisdiction and Defendant has not met its burden of demonstrating that exercise of jurisdiction would not be reasonable. Accordingly, Defendant's motion to dismiss for lack of personal jurisdiction is DENIED.

### III. MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS

#### A. Legal Standard

A federal court lacks personal jurisdiction over a defendant if service of process is insufficient. *See Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987). A motion to dismiss may be brought under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process. Fed. R. Civ. P. 12(b)(5). "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). "If the plaintiff is unable to satisfy this burden, the Court has the discretion to either dismiss the action or retain the action and quash the service of process." *Stevens v. Sec. Pac. Nat'l*

*Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976). "The court may consider evidence outside the pleadings in resolving a Rule 12(b)(5) motion." *Fairbank v. Underwood,* 986 F. Supp. 2d 1222, 1228 (D. Or. 2013).

Pursuant to Rule 4(h)(1)(B), valid service of process on a corporation, partnership, or association may be effected by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Determining whether an individual is a "managing or general agent" depends upon "a factual analysis of that person's authority within the organization." The Ninth Circuit has liberally construed Rule 4 to uphold service "so long as a party receives sufficient notice of the complaint." *Direct Mail Specialists v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). Thus, "[s]ervice of process under Rule 4 is not limited solely to officially designated officers, managing agents, or agents appointed by law for the receipt of process." *Id.* "The rules are to be applied in a manner that will best effectuate their purpose of giving the defendant adequate notice." *Id.* Generally, if it is fair and reasonable to imply authority of an individual to receive service on behalf of a corporation, then service is sufficient. *Id.* Service can be made "upon a representative so integrated with the organization that he will know what to do with the papers." *Id.* However, "without substantial compliance with Rule 4 neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction." *Id.*

**B.    Discussion**

In the present case, each side presents its own version of events with respect to the circumstances of Plaintiff's service of process upon Defendant. Plaintiff submits the declaration of a process server, Paul Scholtes ("Scholtes"), who states the following: he was asked to serve a copy of the summons and FAC on AGIS at its address of 92 Lighthouse Drive, Jupiter, Florida, by serving AGIS's CEO, Malcolm Beyer. Scholtes Decl. ¶ 2, ECF 23-4. Scholtes arrived at the designated address, which he found to be the residence of Malcolm and Margaret Beyer, at approximately 5:00 p.m. on January 29, 2015. *Id.* ¶ 3. He pushed a button that appeared to be a doorbell and intercom. *Id.* A woman who later identified herself as Michelle Morris ("Morris")

14

1  answered, and Scholtes identified himself as a process server there for the purpose of serving
2  Malcolm or Margaret Beyer as officers of AGIS. *Id.* Morris asked him to wait. *Id.* After ten
3  minutes, Scholtes pressed the bell again and again was told to wait. *Id.* After ten more minutes,
4  Scholtes rang a third time. *Id.* Morris answered and stated that if Scholtes could not wait he
5  should leave. *Id.* After five more minutes, Morris came to the door and stated that neither
6  Malcolm nor Margaret Beyer was at home. *Id.* ¶ 4. Morris identified herself as Mr. Beyer's
7  personal assistant, stated that she had spoken by phone to Mr. Beyer and James Fordyce, an
8  attorney, and that both Mr. Beyer and Mr. Fordyce had authorized her to accept service of process.
9  *Id.* ¶ 5. After Scholtes clarified that Morris did not live at the residence, he stated that he could
10 perform substitute service on the corporation only if she was an employee at AGIS. *Id.* ¶ 6.
11 Morris responded that she was an employee of AGIS, that she was Mr. Beyer's personal assistant,
12 and that she was paid by AGIS. *Id.* Scholtes served Morris with the summons and FAC and read
13 the contents to her. *Id.* ¶ 7.

14 Many of the facts set forth in Scholtes' declaration are refuted by Morris's declaration,
15 which is submitted by Defendant. Morris states as follows: she is employed as a personal
16 assistant by AGIS at its principal place of business, which is the Beyers' residence in Jupiter,
17 Florida. Morris Decl. ¶ 1. At approximately 5:30 p.m. on January 29, 2015, someone pushed the
18 office/home front door intercom button. *Id.* ¶ 2. When Morris answered, the person asked for Mr.
19 or Mrs. Beyer for the purpose of serving them with court papers. *Id.* ¶ 3. Morris stated that the
20 Beyers were not available. *Id.* ¶ 4. The person refused to leave, saying that he had called the
21 police and that the police had told him he could wait for the Beyers as long as he wanted. *Id.* ¶ 6.
22 The person's car was blocking the driveway. *Id.* ¶ 5. Morris needed to leave, so she went to the
23 front door and took the papers from the other person. *Id.* ¶ 7. Morris is not an officer or director
24 of AGIS. *Id.* ¶ 8.

25 Defendant also submits Morris's reply declaration, in which she states that: she never said
26 she worked for AGIS, that she spoke with an attorney, or that she was authorized to do anything.
27 Morris Reply Decl. ¶¶ 2-3, ECF 26-2. In fact she did not speak with an attorney. *Id.* ¶ 3. Morris
28 did say that the Beyers were not available and she was not sure when they would be available. *Id.*

United States District Court
Northern District of California

¶ 4. Scholtes sat in the driveway, smoking cigarettes and blocking other vehicles, rang the doorbell a couple of times, and made it clear he was not leaving until he served the papers. *Id.* ¶¶ 5-6. Morris needed to leave so she "signed the papers" to get Scholtes to leave. *Id.* ¶ 7.

Mr. Beyer states in his reply declaration that he never authorized Morris to accept service of the FAC. Beyer Reply Decl. ¶ 18, ECF 26-1. Finally, James Fordyce states in a declaration that he is not an attorney, he did not speak with Morris about the Life360 lawsuit, and he did not authorize her to accept service of process. Fordyce Decl. ¶ 3, ECF 26-3.

While the two versions of events clash with respect to many details, several undisputed facts do emerge. When Scholtes arrived at the business address of AGIS, which also turned out to be the Beyers' residence, Morris appeared to be the only person present. Morris worked for AGIS, she clearly had control of the premises, and she signed for the summons and complaint. AGIS does not dispute that service upon Morris resulted in AGIS's actual receipt of the summons and complaint. Thus any defect in service was at most a technical one. The Ninth Circuit has found effective service of process in similar circumstances. *See Direct Mail*, 840 F.2d at 688 (service on office receptionist was adequate where company was rather small, the receptionist was the only employee in the office when the process server arrived, and service upon the receptionist resulted in actual notice to the defendant company's manager). Accordingly, Defendant's motion to dismiss for insufficient service of process is DENIED.[10]

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's motion to dismiss for lack of personal jurisdiction is DENIED and the motion to dismiss for insufficient service of process is DENIED.

Dated: September 21, 2015

_____
BETH LABSON FREEMAN
United States District Judge

---

[10] The Court notes that even if it had found service of process to be insufficient, the Court would have denied the motion to dismiss, quashed the service, and given Plaintiff another opportunity to serve the summons and FAC. *See Stevens,* 538 F.2d at 1389 ("The choice between dismissal and quashing service of process is in the district court's discretion.").